ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Telephone:  (702) 634-5000
Facsimile:  (702) 380-8572
Email:  ariel.stern@akerman.com
            natalie.winslow@akerman.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, SUCCESSOR TRUSTEE TO WACHOVIA BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF BANC OF AMERICA FUNDING CORPORATION 2004-B TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>SUNRIDGE HEIGHTS HOMEOWNERS ASSOCIATION; SFR INVESTMENTS POOL 1, LLC; and NEVADA ASSOCIATION SERVICES, INC.,<br><br>Defendants. | Case No.: 2:16 cv 00899<br><br>**COMPLAINT** |

Plaintiff U.S. Bank, National Association, Successor Trustee to Wachovia Bank, National Association, as Trustee for the Holders of Banc of America Funding Corporation 2004-B Trust (**U.S. Bank**) complains as follows:

**PARTIES AND JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  U.S. Bank is a citizen of Ohio and on information and belief none of the defendants is a citizen of Ohio.  The amount in controversy exceeds $75,000.

{37160449;6}

2. U.S. Bank is a national banking association. Its headquarters and primary office are in Cincinnati, Ohio. U.S. Bank is a citizen of Ohio for purposes of diversity jurisdiction. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). The diversity of citizenship requirement is met. *See Carolina Casualty Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082 (9th Cir. 2014). Defendants, Sunridge Heights Homeowners Association (**Sunridge**), Nevada Association Services, Inc. (**NAS**) and SFR Investments Pool 1, LLC (**SFR**), are on information and belief not citizens of Ohio. The amount in controversy requirement is met. U.S. Bank seeks a declaration its deed of trust was not extinguished by a homeowner's association non-judicial foreclosure sale that is the basis for SFR's claim to title to the real property sub judice.

3. Defendant Sunridge is a Nevada non-profit corporation. U.S. Bank is informed and believes and therefore alleges Sunridge is the purported beneficiary under an alleged homeowners' association lien recorded April 20, 2010. U.S. Bank is informed and believes and therefore alleges Sunridge foreclosed on the lien on January 11, 2013.

4. Defendant SFR is, on information and belief, a limited liability company organized under the laws of the state of Nevada. SFR's sole member is SFR Investments, LLC, also a Nevada limited liability company. SFR Investment's LLC's sole member is SFR Funding, LLC, a Delaware limited liability company. SFR Funding, LLC's sole member is Xiemen Limited Partnership, a Canadian limited partnership. SFR has not revealed the citizenship or identities of the Xiemen's limited partners. U.S. Bank is informed and believes and therefore alleges SFR purchased the property at the HOA foreclosure sale, acquiring title via a foreclosure deed recorded January 16, 2013.

5. Defendant NAS is a Nevada corporation. U.S.Bank is informed and believes and therefore alleges NAS conducted the foreclosure at issue in this case on behalf of Sunridge.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 for reasons stated above.

7. Venue is proper in this Court under 28 U.S.C. § 1391. The property that is the subject of this action is located at 2128 Horse Prairie Drive, Henderson, Nevada 89052 (the

{37160449;6}

**property**). Venue is proper in this Court under 28 U.S.C. § 1391(1) and (2) because this action seeks to determine an interest in property located within Clark County, Nevada and because this lawsuit arises out of a foreclosure of real property located within Nevada.

8. The pre-litigation dispute resolution process set forth in NRS 38.300 *et seq.* is not applicable to this action and cannot restrict the jurisdiction of this court. To the extent any requirement of the statute is applicable to any portion of the claims asserted herein, that requirement has been constructively exhausted and further resort to administrative remedies would be futile because U.S. Bank submitted a demand for mediation to Nevada Real Estate Division (**NRED**) on or about January 4, 2016, but NRED has failed to schedule the mediation in the time period required by NRS 38.330(1).

## GENERAL ALLEGATIONS

9. Under Nevada state law, homeowners' associations have the right to charge property owners residing within the community assessments to cover the homeowners' associations' expenses for maintaining or improving the community, among other things.

10. When these assessments go unpaid, the association may impose a lien and then foreclose on a lien if the assessments remain unpaid.

11. NRS Chapter 116 generally provides a non-judicial foreclosure scheme for a homeowners' association to conduct a non-judicial foreclosure where the unit owner fails to pay its monthly assessments.

12. NRS 116.3116 makes a homeowners' association lien for assessments junior to a first deed of trust beneficiary's secured interest in the property, with one limited exception: a homeowners' association lien is senior to a first deed of trust beneficiary's secured interest "to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien[.]" NRS 116.3116(2)(c).

{37160449;6}

### The Deed of Trust and Assignment

13. On or about August 20, 2004, Suzie Nguyen Su (**Su**) obtained a loan from DHI Mortgage Company, Ltd. in the amount of $567,650.00 evidenced by a note and secured by a deed of trust (the **senior deed of trust**) recorded September 10, 2004. A true and correct copy of the senior deed of trust is recorded with the Clark County Recorder as **Instrument No. 20040910-0002535**.

14. The senior deed of trust was assigned to U.S. Bank via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Clark County Recorder as **Instrument No. 201301110000848**.

### The HOA Lien and Foreclosure

15. Upon information and belief, Su failed to pay Sunridge all amounts due to it. On April 20, 2010, Sunridge, through its agent Nevada Association Services, Inc. (**NAS**) recorded a notice of delinquent assessment lien. Per the notice, the amount due to Sunridge was $1,195.00, which includes "late fees, collection fees and interest in the amount of $755.00." A true and correct copy of the notice of lien is recorded with the Clark County Recorder as **Instrument No. 201004200002956**.

16. On July 27, 2010, Sunridge, through its agent NAS, recorded a notice of default and election to sell to satisfy the delinquent assessment lien. The notice states the amount due to Sunridge was $2,460.00 as of July 23, 2010, but does not specify whether it includes dues, interest, fees and collection costs in addition to assessments. A true and correct copy of the notice of default is recorded with the Clark County Recorder as **Instrument No. 201007270001806**. The notice of default also does not specify the super-priority amount claimed by Sunridge and fails to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

17. On February 3, 2011, Sunridge, through its agent NAS, recorded a notice of trustee's sale. The trustee's sale was scheduled for March 4, 2011. The notice states the amount due to Sunridge was $3,904.98, which includes "the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial

{37160449;6}

publication[.]"  A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201102030001517**.  The notice of sale does not identify the super-priority amount claimed by Sunridge and fails to describe the "deficiency in payment" required by NRS 116.311635(3)(a).

18.    On December 20, 2012, Sunridge, through its agent NAS, recorded a second notice of trustee's sale.  The trustee's sale was scheduled for January 11, 2013.  The notice states the amount due to Sunridge was $6,815.15, which includes "the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication[.]"  A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201212200003590**.  The notice of sale does not identify the super-priority amount claimed by Sunridge and fails to describe the "deficiency in payment" required by NRS 116.311635(3)(a).

19.    In none of the recorded documents nor in any notice did Sunridge and/or its agent provide notice of the purported super-priority lien amount, where to pay the amount, how to pay the amount, or the consequences for failure to do so.

20.    In none of the recorded documents nor in any notice did Sunridge and/or its agent specify whether it was foreclosing on the super-priority portion of its lien, if any, or on the sub-priority portion of its lien.

21.    In none of the recorded documents nor in any notice did Sunridge and/or its agent specify the senior deed of trust would be extinguished by Sunridge's foreclosure.

22.    In none of the recorded documents nor in any notice did Sunridge and/or its agent identify any way by which the beneficiary under the senior deed of trust could satisfy the super-priority portion of Sunridge's claimed lien.

23.    The deficiencies in the notices notwithstanding, on or about November 5, 2010, after Sunridge recorded its notice of default, the former loan servicer, BAC Home Loans Servicing, LP (**BAC**), remitted payment to Sunridge to satisfy the super-priority amount owed to Sunridge.

24.    On September 23, 2010, BAC requested a ledger from Sunridge identifying the

{37160449;6}

super-priority amount allegedly owed to Sunridge. Sunridge refused to identify the super-priority amount, and instead provided a ledger, dated October 14, 2010 identifying the total amount allegedly owed.

25. BAC and its counsel were forced to attempt to calculate the super-priority amount claimed by Sunridge by reference to the October 14, 2010 ledger.

26. Based on the monthly assessment amount identified in Sunridge's October 14, 2010 ledger, BAC accurately calculated the true super-priority amount as $607.50, the sum of nine-months of common assessments as identified in Sunridge's ledger, and tendered that amount to Sunridge on November 5, 2010. A true and correct copy of Sunridge's ledger and BAC's tender letter are attached as **Exhibit 1**. Sunridge refused BAC's tender.

27. Despite the tender, Sunridge foreclosed on the property on or about January 11, 2013. A foreclosure deed in favor of SFR was recorded January 16, 2013. A true and correct copy of the foreclosure deed is recorded with the Clark County Recorder as **Instrument No. 201301160001926**.

28. The foreclosure deed recites the sale price at the January 11, 2013 foreclosure sale was $25,300.00. Sunridge's sale of the property to SFR for less than 5% of the value of the unpaid principal balance on the senior deed of trust, and, on information and belief, for a similarly diminutive percentage of the property's fair market value, is commercially unreasonable and not in good faith as required by NRS 116.1113.

## **FIRST CAUSE OF ACTION**

**(Quiet Title/Declaratory Judgment Against All Defendants)**

29. U.S. Bank repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

30. Pursuant to 28 U.S.C. § 2201 and NRS 30.040 *et seq.*, this Court is empowered to declare the rights of parties and other legal relations of parties regarding the property.

31. An actual controversy has arisen between U.S. Bank and defendants regarding the property. The senior deed of trust is a first secured interest on the property. As a result of the

{37160449;6}

January 11, 2013 foreclosure sale, SFR claims an interest in the property, and on information and belief, asserts SFR owns the property free and clear of the senior deed of trust.

32. U.S. Bank's interest in the senior deed of trust encumbering the property constitutes an interest in real property.

33. U.S. Bank is entitled to a declaration that Sunridge's foreclosure did not extinguish the senior deed of trust, or, alternatively, Sunridge's foreclosure is void.

### *NRS Chapter 116 Violates U.S. Bank's Right to Procedural Due Process*

34. U.S. Bank asserts that Chapter 116 of the Nevada Revised Statutes' scheme of HOA super priority non-judicial foreclosure violates U.S. Bank's procedural due process rights under the state and federal constitutions.

35. The Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution protect U.S. Bank from being deprived of its deed of trust in violation of procedural due process guarantees of notice and an opportunity to be heard.

36. U.S. Bank asserts there is no way to apply Nevada's scheme of non-judicial HOA super priority foreclosure that complies with Nevada and the United States' respective guarantees of procedural due process.

37. The Nevada Constitution does not expressly set forth a state action requirement. Even if it did, and consistent with the state action requirements of the Federal Constitution, the state of Nevada has become sufficiently intertwined with HOA foreclosure such that state and federal procedural due process protections for U.S. Bank's deed of trust apply, to wit:

a) The super priority lien did not exist at common law, but rather is imposed by statute.

b) In order to conserve governmental resources and fund the quasi-governmental HOA, Nevada's legislature made super priority mandatory, expanded the super-priority duration from six to nine months, and declared it could not contractually subordinate its lien by provisions within a HOA's covenants, conditions, and restrictions.

{37160449;6}

      c)     The super priority lien has no nexus whatsoever to a private agreement between Sunridge and U.S. Bank, but, again, is imposed by legislative enactment.

      d)     Nevada and Clark County mandated the creation of Sunridge as a quasi-governmental entity to perform governmental functions including maintaining the common open spaces and private streets within the Sunridge Heights community.

38.    Since the state of Nevada is responsible for the creation of the super priority lien and has made it mandatory, then Nevada's HOA super priority foreclosure scheme is the result of state action subject to procedural due process safeguards.

39.    On its face, Nevada's scheme of non-judicial HOA super priority foreclosure lacks any pre-deprivation notice requirements or post deprivation redemption options that are necessary components of due process:

      a)     NRS 116.31162 and NRS 116.311635 do not require that an HOA provide U.S. Bank with written notice of the sum that constitutes the super priority portion of the assessment lien.

      b)     Chapter 116 of NRS seeks to insulate its scheme of super priority non-judicial foreclosure by failing to provide any post-sale right of equity or redemption.

      d)     Chapter 116 of NRS fails to provide U.S. Bank with a statutorily enforceable mechanism to compel an HOA to inform U.S. Bank of the sum of the HOA super priority amount.

40.    As applied, the HOA non-judicial foreclosure violated state and federal procedural due process protections for U.S. Bank's deed of trust since neither U.S. Bank nor BAC was provided with any notice BAC's physical delivery of a check for 9 months of assessments did not redeem the deed of trust's priority prior to the HOA foreclosure.

41.    U.S. Bank requests that this Court void the HOA foreclosure sale or declare that SFR's title was acquired subject to the senior deed of trust because NRS 116's scheme of HOA super priority foreclosure violates the procedural process clauses of the Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution.

{37160449;6}

*Additional Reasons the HOA Foreclosure Sale Did Not Extinguish the Senior Deed of Trust*

42. The HOA sale is void or did not extinguish the senior deed of trust for additional reasons stated below.

43. The foreclosure sale did not extinguish the senior deed of trust because the recorded notices, even if they were in fact provided, failed to describe the lien in sufficient detail as required by Nevada law, including, without limitation: whether the deficiency included a "super-priority" component, the amount of the super-priority component, how the super-priority component was calculated, when payment on the super-priority component was required, where payment was to be made or the consequences for failure to pay the super-priority component. Alternatively, the foreclosure sale is void.

44. The foreclosure sale did not extinguish the senior deed of trust because BAC tendered and satisfied the super-priority amount and Sunridge wrongfully rejected the tender. Alternatively, the foreclosure sale is void.

45. The foreclosure sale did not extinguish the senior deed of trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS 116.1113 in several respects, including, without limitation, the lack of sufficient notice, Sunridge's wrongful rejection of the tender, the sale of the property for a fraction of the loan balance or actual market value of the property, a foreclosure that was not calculated to promote an equitable sales prices for the property or to attract proper prospective purchasers, and a foreclosure sale that was designed and/or intended to result in maximum profit for Sunridge, its agent NAS, and SFR at the sale without regard to the rights and interest of those who have an interest in the loan and made the purchase of the property possible in the first place. Alternatively, the foreclosure sale is void.

46. The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate U.S. Bank's rights to due process, as a result of Sunridge's failure to provide sufficient notice of the super-priority component of Sunridge's lien, the manner and method to satisfy it, and the consequences for failing to do so. Alternatively, the foreclosure sale is void.

{37160449;6}

47.     The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate U.S. Bank's rights to due process, as a result of Sunridge's improper calculation of the super-priority component, its inclusion of charges that are not part of the super-priority lien under Nevada law, and its rejection of BAC's tender of the super-priority component of the lien. Alternatively, the foreclosure sale is void.

48.     The foreclosure sale did not extinguish the senior deed of trust because SFR does not qualify as a bona fide purchaser for value, because it was aware of, or should have been aware of, the existence of the senior deed of trust, BAC's satisfaction of the super-priority component of Sunridge's lien, and the commercial unreasonableness of the HOA sale. Alternatively, the foreclosure sale is void.

49.     U.S. Bank is entitled to a declaration, pursuant to 28 U.S.C. § 2201, NRS 30.040, and NRS 40.010, that the HOA sale did not extinguish the senior deed of trust.

50.     U.S. Bank was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of NRS 116.1113 against Sunridge and NAS)

51.     U.S. Bank repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

52.     NRS § 116.1113 and common law provide that every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement.

53.     Sunridge's recorded CC&Rs contain a priority of assessment lien clause which represents that Sunridge's entire lien will be subordinate to the senior deed of trust.

54.     Sunridge's recorded CC&Rs also contain a mortgagee protection provision which provides that no "enforcement of any provision of this Declaration shall defeat or render invalid the rights of the Beneficiary under any Recorded First Deed of Trust encumbering a Unit made in good faith and for value." This provision makes U.S. Bank a direct beneficiary of the protections afforded

{37160449;6}

under the CC&Rs, with all accompanying duties implied and existing under Chapter 116 and common law.

55. NRS Chapter 116 requires Sunridge and its agent NAS to comply with the obligations of the CC&Rs, including the a priority of assessment lien clause and the mortgagee protection provision.

56. After making the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust and no breach of any obligation imposed by the CC&Rs would jeaopardize the beneficiary of the senior deed of trust, Sunridge and its agent NAS are charged with a duty to inform lenders and loan servicers like U.S. Bank and BAC that its representation regarding the unequivocal protection of security interests in the CC&Rs was false, to identify the super-priority amount to lenders and loan servicers like U.S. Bank and BAC, to notify them that their security interest was at risk, and to provide an opportunity to satisfy the super-priority amount to protect their security interest in the property.

57. After making these representation in the CC&Rs, Sunridge and its agent NAS are charged with the duty to either not foreclose or to specifically foreclose on only the sub-priority portion of its lien.

58. As a senior lienholder, Sunridge also owes all junior lienholders a duty of good faith to treat it fairly with regard to decisions regarding the disposal of the collateral securing the respective liens.

59. Sunridge and its agent NAS breached their duties of good faith by not complying with the obligations in the CC&Rs that Sunridge's lien would be subordinate to the senior deed of trust and no breach of any obligation imposed by the CC&Rs would jeaopardize the beneficiary of the senior deed of trust, by not informing U.S. Bank or BAC that Sunridge's representations in the CC&Rs were false, by not identifying the super-priority amount of Sunridge's lien for U.S. Bank or BAC, by not notifying U.S. Bank or BAC that their security interest was at risk, by rejecting BAC's attempt to tender the super-priority amount, and by obstructing U.S. Bank and BAC's ability to protect their security interest in the property.

{37160449;6}

60. If it is determined Sunridge's sale extinguished the senior deed of trust notwithstanding the deficiencies, violations, and improper actions described herein, Sunridge and its agent NAS's breach of its obligation of good faith will cause U.S. Bank to suffer general and special damages in the amount equal to the fair market value of the property or the unpaid principal balance of the loan at issue, plus interest, at the time of the HOA sale, whichever is greater.

61. U.S. Bank was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### (Wrongful Foreclosure against Sunridge and NAS)

62. U.S. Bank repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

63. To the extent defendants contend or the Court concludes Sunridge's foreclosure sale extinguished the senior deed of trust, the foreclosure was wrongful.

64. Because Sunridge and its agent NAS failed to give adequate notice and an opportunity to cure the deficiency, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

65. Because BAC satisfied the super-priority portion of Sunridge's lien prior to the foreclosure sale there was no default in the super-priority component of Sunridge's lien at the time of the foreclosure sale and the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

66. Because Sunridge and its agent NAS sold the property for a grossly inadequate amount, compared to the value of the property and amount of outstanding liens defendants contend were extinguished by the foreclosure sale, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

67. Because Sunridge and its agent NAS violated the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

{37160449;6}

68. Because Sunridge and its agent NAS violated the representation in the CC&Rs that no breach of any obligation imposed by the CC&Rs would jeopardize the rights of the beneficiary of the senior deed of trust, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

69. Because Sunridge's unequivocal representation in its CC&Rs that the rights of the beneficiary under the senior deed of trust would not be jeopardized caused the sales price to be grossly inadequate, the foreclosure was commercially reasonable and wrongful to the extent HOA contends it extinguished the senior deed of trust.

70. Because Sunridge and its agent NAS violated the good faith requirements of NRS 116.1113, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

71. If it is determined Sunridge's foreclosure sale extinguished the senior deed of trust notwithstanding the deficiencies, violations, and improper actions described herein, Sunridge and its agent NAS's actions will cause U.S. Bank to suffer general and special damages in the amount equal to the fair market value of the property or the unpaid principal balance of the loan at issue, plus interest, at the time of the sale, whichever is greater.

72. U.S. Bank was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

{37160449;6}

## FOURTH CAUSE OF ACTION

### (Injunctive Relief against SFR)

73. U.S. Bank repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

74. U.S. Bank disputes SFR's claim it owns the property free and clear of the senior deed of trust.

75. Any sale or transfer of the property by SFR, prior to a judicial determination concerning the respective rights and interests of the parties to this case, may be rendered invalid if the senior deed of trust still encumbers the property in first position and was not extinguished by the HOA sale.

76. U.S. Bank has a substantial likelihood of success on the merits of the complaint, and damages would not adequately compensate for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the property.

77. U.S. Bank has no adequate remedy at law due to the uniqueness of the property involved in this case and the risk of the loss of the senior security interest.

78. U.S. Bank is entitled to a preliminary injunction prohibiting SFR, or its successors, assigns, or agents, from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust.

79. U.S. Bank is entitled to a preliminary injunction requiring SFR to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

### PRAYER FOR RELIEF

U.S. Bank requests the Court grant the following relief:

1. An order declaring that SFR purchased the property subject to U.S. Bank's senior deed of trust

2. In the alternative, an order that the HOA foreclosure sale, and any resulting foreclosure deed, was void ab initio

{37160449;6}

3. In the alternative, an order requiring Sunridge and NAS to pay U.S. Bank all amounts by which it was damaged as a result of Sunridge's and NAS's wrongful foreclosure and/or violation of the good faith provisions of NRS § 116.1113;

4. A preliminary injunction prohibiting SFR, its successors, assigns, or agents from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust;

5. A preliminary injunction requiring SFR to pay all taxes, insurance, and homeowner's association dues during the pendency of this action;

6. Reasonable attorneys' fees as special damages and the costs of suit; and

7. For such other and further relief the Court deems proper.

DATED April 20, 2016.

**AKERMAN LLP**

/s/ Ariel E. Stern, Esq.
———————————————
Ariel E. Stern, Esq.
Nevada Bar No. 8276
Natalie L. Winslow, Esq.
Nevada Bar No. 12125
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Plaintiff*

{37160449;6}