**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:16-cv-00899-GMN-BNW |
| vs. | ) |
| | ) **ORDER** |
| SUNRIDGE HEIGHTS HOMEOWNERS ASSOCIATION, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| SFR INVESTMENTS POOL 1, LLC, | ) |
| | ) |
| Counter/Cross-Claimant, | ) |
| vs. | ) |
| | ) |
| U.S. BANK, NATIONAL ASSOCIATION; SUZIE NGUYEN SU, | ) |
| | ) |
| Counter/Cross-Defendants. | ) |

Pending before the Court is Plaintiff U.S. Bank, National Association's ("Plaintiff's") Motion for Partial Summary Judgment, (ECF No. 73). SFR Investments Pool 1, LLC ("SFR") and Sunridge Heights Homeowners Association ("HOA") (collectively "Defendants") filed Responses, (ECF Nos. 81, 82), and Plaintiff filed Replies, (ECF Nos. 84, 85).

Also pending before the Court are Defendants' Motions for Summary Judgment, (ECF Nos. 72, 74). Plaintiff filed Responses, (ECF Nos. 79, 80); SFR filed a Response, (ECF No. 77), to HOA's Motion for Summary Judgment; and Defendants filed Replies in support of their Motions for Summary Judgment, (ECF Nos. 78, 83, 86).

## I. BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 2128 Horse Prairie Drive, Henderson, Nevada 89052 (the "Property"). In 2004, Suzie Nguyen Su ("Borrower") financed a purchase of the Property by way of loan in the amount of $567,650.00 secured by a deed of trust ("DOT"), for which DHI Mortgage Company, Ltd. ("DHI") served as the original beneficiary. (*See* DOT, Ex. A-3 to SFR's MSJ, ECF No. 74-1). DHI later assigned the DOT to BAC Home Loans Servicing, LP ("BAC"). (Assignment, Ex. A-9 to SFR's MSJ, ECF No. 74-1).

In 2010, upon Borrower's failure to pay all amounts due on the Property, HOA through its agent Nevada Association Services, Inc. ("NAS") initiated foreclosure proceedings. (Notice of Lien, Ex. E to Pl.'s MSJ, ECF No. 73-5); (Notice of Default, Ex. F to Pl.'s MSJ, ECF No. 73-6). In September of that year, BAC sent NAS a letter requesting a calculation of the superpriority portion of HOA's lien. (Request for Accounting, Ex. 1 to Miles Bauer Aff., ECF No. 73-7). NAS responded with a payment history report, from which BAC calculated nine months' worth of common assessments. (Payment History Report, Ex. 2 to Miles Bauer Aff., ECF No. 73-7). Accordingly, on November 5, 2010, BAC sent NAS a check for $607.50, which NAS rejected. (Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 73-7); (*see also* 30(b)(6) Dep. 64:15–65:20, Ex. H to Pl.'s MSJ, ECF No. 73-8).

In February of 2011, NAS proceeded with foreclosure proceedings by recording a Notice of Foreclosure Sale. (Notice of Sale, Ex. I to Pl.'s MSJ, ECF No. 73-9). In July of that year, BAC merged with Bank of America, National Association ("BANA"). (Certificate of Merger, Ex. C. to Pl.'s MSJ, ECF No. 73-3). With BANA as the DOT holder, NAS recorded a second Notice of Foreclosure sale in December of 2012. (Notice of Sale, Ex. J to Pl.'s MSJ, ECF No. 73-10).

On January 11, 2013, NAS, on behalf of HOA, sold the Property through a foreclosure sale. (Foreclosure Deed, Ex. K to Pl.'s MSJ, ECF No. 73-11). That same day, BANA recorded its assignment of the DOT to Plaintiff. (Assignment, Ex. D to Pl.'s MSJ, ECF No. 73-4).

Due to the foreclosure sale, Plaintiff initiated this lawsuit on April 29, 2016, asserting four causes of action: (1) quiet title with the requested remedy of declaratory relief; (2) breach of Nevada Revised Statute ("NRS") 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (Compl. ¶¶ 9–79, ECF No. 1). SFR then filed an Answer, asserting counterclaims for quiet title, slander of title, and injunctive relief against Plaintiff; as well as crossclaims for quiet title and injunctive relief against Borrower. (Answer ¶¶ 45–69, ECF No. 25).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citations omitted). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

(internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Plaintiff moves for summary judgment with its quiet title claim on the ground that BAC tendered payment to NAS prior to the foreclosure sale and accordingly preserved Plaintiff's DOT by extinguishing HOA's superpriority lien. (Pl.'s MSJ 2:11–3:11, 6:10–9:3, ECF No. 73). Plaintiff also contends that the DOT remains on the Property because the foreclosure was conducted pursuant to an unconstitutional statutory scheme, or, in the alternative, the Property's foreclosure sale violated due process and was conducted under unfair circumstances that warrant setting aside the sale on equitable grounds. (*Id.* 2:11–3:11).

Defendants seek summary judgment on Plaintiff's claims by arguing that Plaintiff's quiet title claim is time-barred, that Plaintiff does not have standing to assert it claims, that the foreclosure sale complied with NRS Chapter 116, that Plaintiff cannot establish an equitable basis for setting aside the sale, and that Plaintiff's constitutional arguments fail based on recent case law. (HOA's MSJ 6:23–8:23, 10:8–16:26, ECF No. 72); (SFR's MSJ 8:3–16:5, ECF No.

74); (SFR's Resp. to Pl.'s MSJ ("SFR's Resp.") 6:11–7:2, ECF No. 82). SFR further contends that the Court should grant summary judgment in its favor for its competing quiet title claim against Plaintiff and Borrower. (SFR's MSJ 12:3–15:14, 17:6–12).

The below discussion first addresses the statutory limitations period applicable to Plaintiff's quiet title claim. Then, it addresses Plaintiff's standing, the constitutionality of the foreclosure, and tender of the superpriority portion of HOA's lien prior the sale.

### A. Statute of Limitations

According to SFR, Plaintiff's quiet title claim is premised upon breaches of statutory duties, particularly those codified in NRS Chapter 116, and is therefore subject to the three-year limitations period under NRS 11.190(3). (SFR's Resp. 6:11–7:2). SFR thus asserts that Plaintiff's failure to file this action within three years of the foreclosure sale warrants dismissal of the quiet title claim. (*Id.*).

This Court has previously found that the five-year limitations period set forth in NRS 11.070 applies to a lender's quiet title claim in this context. *See, e.g.*, *Bank of Am., N.A. v. Woodcrest Homeowners Ass'n*, No. 2:16-cv-00309-GMN-GWF, 2019 WL 1441602, at *4 (D. Nev. Mar. 30, 2019); *Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*, No. 2:18-cv-00194-GMN-GWF, 2019 WL 1410887, at *3 (D. Nev. Mar. 28, 2019). Here, because Plaintiff brought this action less than five years after the January 11, 2013 foreclosure sale, the quiet title claim is timely and properly before the Court. (*See* Compl., ECF No. 1) (filed April 20, 2016).

### B. Standing

According to SFR, Plaintiff lacks standing because it has neither produced "the original, wet-ink endorsed Note," nor demonstrated the "chain of ownership of the Note and the DOT." (SFR's Resp. 7:3–9:8). Both arguments are without merit.

It is well established that a quiet title action may be advanced by "any person against another who claims an estate or interest in real property, adverse to the person bringing the

action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Plaintiff seeks a declaration as to the viability of its lien interest relative to SFR's interest. SFR appears to conflate Plaintiffs' declaratory relief action with one for enforcement of the note and deed of trust through foreclosure. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 258 (Nev. 2012) ("[T]o foreclose, one must be able to enforce both the promissory note and the deed of trust."). As to SFR's chain-of-title contention, SFR offers no competing evidence to rebut Plaintiff's production of the DOT, as well as the subsequent assignments by which Plaintiff gained all beneficial interest in the same. (*See* DOT, Ex. A to Pl.'s MSJ, ECF No. 73-1); (Assignments, Exs. B and D to Pl.'s MSJ, ECF Nos. 73-2, 73-4). Accordingly, the Court rejects SFR's argument that Plaintiff is without standing to bring the instant quiet title action.

**C. Constitutionality of the Foreclosure**

The parties dispute whether the Ninth Circuit's holding in *Bourne Valley* compels the Court to find that Plaintiff's DOT survived the HOA foreclosure sale. *See Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) (holding NRS Chapter 116's opt-in notice scheme is facially unconstitutional due to the absence of mandatory notice provisions); (Pl.'s MSJ 9:4–13:8, ECF No. 73); (SFR's MSJ 8:4–20, ECF No. 74). As this Court has previously explained, in light of the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (en banc), *Bourne Valley* is no longer controlling law with respect to NRS Chapter 116's notice provisions and, consequently, its finding of facial unconstitutionality. *See Bank of Am., N.A. v. Falcon Point Ass'n*, 347 F. Supp. 3d 592, 597–99 (D. Nev. 2018). To the extent there is any lingering doubt, the Ninth Circuit Court of Appeals has recently put the issue to rest. *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623–24 (9th Cir. 2019) ("*Bourne Valley* no longer controls the analysis, and we conclude that Nev. Rev. Stat. § 116.3116 *et seq.*

is not facially unconstitutional on the basis of an impermissible opt-in notice scheme."). Accordingly, to the extent Plaintiff seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

### D. Tender of the Superpriority Portion of HOA's Lien

Plaintiff argues that BAC's payment of nine-months' worth of HOA common assessments constituted a valid and unconditional tender, thus extinguishing HOA's superpriority lien prior to the foreclosure sale. (Pl.'s MSJ 6:10–9:3, ECF No. 73). SFR responds that Plaintiff did not provide admissible evidence of a valid tender. (SFR's Resp. 9:9–12:6, ECF No. 82). SFR also argues that the purported tender was invalid because the letter accompanying payment contained impermissible conditions, including a requirement that HOA waive its rights under NRS Chapter 116. (*Id.* 14:18–18:4).

Beginning with SFR's arguments about the admissibility of Plaintiff's evidence for tender payments, SFR contends the Court must exclude Plaintiff's exhibits and affidavit purporting to demonstrate evidence of tender (collectively the "Miles Bauer Affidavit") on the following grounds that: (1) the exhibits are not properly authenticated; and (2) the exhibits' affiant, Douglas Miles, is without personal knowledge of the attached records. (SFR's Resp. 9:9–12:6, ECF No. 82). The Court previously considered and rejected both of these arguments in *Bank of Am., N.A. v. Lake Mead Court Homeowners' Ass'n*, No. 2:16-cv-00504-GMN-NJK, 2019 WL 208864, at *5–7 (D. Nev. Jan. 15, 2019). For the reasons stated in that decision, SFR's arguments are without merit. Moreover, the Court is satisfied that the contents of the Miles Bauer Affidavit could be provided in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Bank of Am., N.A. v. Sunset Ridge Ltd. Homeowners Ass'n*, No. 2:16-cv-00797-GMN-NJK, 2019 WL 1440252, at *3 n.2 (D. Nev. Mar. 29, 2019).

Addressing now Plaintiff's purported tender, under NRS 116.3116 the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* NRS 116.31166(1); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev. 2016). In addition to a full tender of the superpriority amount, a "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 118 (Nev. 2018) (en banc).

Here, the evidence indicates that on November 5, 2010, Miles Bauer, on behalf of BAC, sent a letter to HOA's agent, NAS, alongside a check for $607.50. (*See* Tender Letter, Ex. 3 to Miles Aff., ECF No. 73-7). BAC calculated that amount based on nine months of owed assessments, at $67.50 per month. (*See* Pl.'s MSJ 4:3–11); (Statement of Account, Ex. 2 to Miles Aff., ECF No. 73-7). An accounting ledger provided by HOA prior to the Property's foreclosure sale confirms BAC's calculation; and NAS's ledger does not reveal nuisance and abatement charges. (*See* Statement of Account, Ex. 2 to Miles Aff.). Thus, BAC's tender of the $607.50 check to NAS undisputedly satisfied the HOA's outstanding superpriority lien prior to the HOA foreclosure sale.

SFR and HOA, in turn, have failed to produce competing evidence showing that Plaintiff miscalculated the superpriority lien amount, that the lien included nuisance and abatement charges, or that Plaintiff never delivered the letter and accompanying check. The remaining question, therefore, is whether Plaintiff's tender was either unconditional or with conditions on which Plaintiff had the right to insist.

BAC's Tender Letter, in relevant part, contained the following language:

> [O]ur client has authorized us to make payment to you in the amount of $607.50 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $607.50, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA against the first deed of trust lienholder. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BAC's financial obligations towards the HOA in regards to the real property located at 2128 Horse Prairie Drive have now been "paid in full."

(Tender Letter, Ex. 3 to Miles Aff., ECF No. 73-7).

SFR argues that the tender letter is invalid because it is impermissibly conditional. (*See* SFR's Resp. 13:2–14:16). SFR asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*Id.*).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and otherwise valid.[1] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which BAC had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

SFR argues, however, that because the letter omits any reference to abatement charges and expressly notes that the check applies solely to nine months of HOA assessments,

---

[1] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

acceptance of the tender would force HOA to waive a portion of its superpriority lien. (SFR's Resp. 15:19–17:17). In this case, because there is no genuine dispute that maintenance and abatement charges were not incurred during the relevant time period, acceptance of the letter's facts in this regard would not force the association to waive a portion of its superpriority lien as SFR urges. Moreover, SFR does not provide evidence of abatement charges owed during the delinquency process in this matter.

Additionally, the Court rejects SFR's argument that the tender letter improperly purports to absolve BAC and Plaintiff of any future liability it may have to HOA. The Court is in accord with the Nevada Supreme Court that the letter's reference to "facts stated herein," immediately preceding the language about BAC's obligations being "paid in full," can only be reasonably interpreted as applying to the underlying foreclosure proceeding. *Sage Realty LLC Series 2 v. Bank of New York Mellon*, No. 73735, 2018 WL 6617730, at *1 (Nev. Dec. 11, 2018) (unpublished) ("The letter refers to 'the facts stated herein,' which can only be reasonably construed as contemplating the underlying foreclosure proceeding and not a future scenario in which BNYM might again need to cure a default as to the superpriority portion of the HOA's lien to protect its first deed of trust."); *Deutsche Bank Nat'l Tr. Co. v. Premier One Holdings, Inc.*, 431 P.3d 55 (Nev. 2018) (unpublished) (same); *Fiducial, LLC v. Bank of New York Mellon Corp.*, No. 71864, 2018 WL 6617727, at *2 (Nev. Dec. 11, 2018) (same).

Lastly, SFR is incorrect in its contention that equitable principles should prevent the tender payment from preserving Plaintiff's DOT. (SFR's Resp. 18:6–20:19). Specifically, SFR states that Plaintiff waived its right to enforce the tender payment because the payment occurred back in 2010, yet this suit did not arise until 2016; that Plaintiff is equitably estopped from claiming it paid the superpriority portion this late; and that Plaintiff has unclean hands because Plaintiff did not take timely action to enforce its tender even after SFR purchased the Property. (*Id.*). As previously explained, Plaintiff brought this action within the applicable

limitations period, and stated the purpose for its payment when it sent the accompanying letter. SFR does not cite other decisions that have found such equitable doctrines to prevent the enforcement of a valid tender under similar circumstances and facts. Indeed, later decisions in this District have found otherwise. *See Selene Fin., L.P. v. Saticoy Bay LLC Series 1168 Aspen Cliff*, No. 2:16-cv-02618-JAD-NJK, 2019 WL 2270588, at *5 (D. Nev. May 28, 2019).

### E. SFR's Status as a Bona Fide Purchaser

Because BAC satisfied the HOA's superpriority lien, SFR cannot prevail even if the Court were to find that it was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, considering BAC's tender, SFR's status as a bona fide purchaser is immaterial.

Based upon the foregoing, BAC's tender satisfied HOA's superpriority lien and thus invalidated the ensuing sale to the extent it extinguished Plaintiff's DOT. While the sale remains intact, Plaintiff's DOT continues to encumber the Property, and SFR's interest is subject to this encumbrance. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment as to its quiet title claim; and denies SFR's Motion with respect to its competing quiet title claim against Plaintiff.[2]

---

[2] The Court's holding that the sale remains intact, and that SFR's interest is subject to Plaintiff's DOT, does not implicate an interest of HOA. HOA states in its Motion for Summary Judgment that it "is not relevant to the specific interests conveyed or extinguished by the foreclosure sale as the HOA asserts no adverse claim to the property and should not be a party to this action." (HOA's MSJ 5:23–24, 6:16–22, ECF No. 72) ("[T]he HOA does not assert or claim any ownership interest in the property pursuant to the foreclosure sale.").

## F. Plaintiff's Remaining Claims for Breach of NRS 116.1113, Wrongful Foreclosure, and Injunctive Relief

In its prayer for relief, Plaintiff primarily requests an order declaring that "SFR purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 14:22–23, ECF No. 1). The other relief requested—except for injunctive relief—is phrased in the alternative. (*See id.* 14:25–15:10). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. The Court accordingly dismisses Plaintiff's breach of NRS 116.1113 and wrongful foreclosure claims as moot. As to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

## G. SFR's Quiet Title Claim Against Borrower

SFR seeks summary judgment on its quiet title claim against Borrower on the basis that "it obtained title of the unit's owners without equity or right of redemption" by purchasing the Property. (SFR's MSJ 17:6–12, ECF No. 74). Because the Court holds that the sale remains intact, and given SFR's evidence of its interest in the Property relative to that of Borrower, SFR's Motion is granted to the extent Borrower asserts any adverse interest in the Property. *See Bank of Am., N.A.*, No. 216-cv-00814-GMN-CWH, 2018 WL 4682317, at \*8; *Deutsche Bank Nat'l Tr. Co. v. Foothills at S. Highlands Homeowners Ass'n*, No. 2:16-cv-00245-GMN-PAL, 2018 WL 3613984, at \*5 (D. Nev. July 27, 2018).[3]

## H. Slander of Title

Plaintiff argues that the Court should grant summary judgment in its favor as to SFR's slander of title counterclaim because SFR cannot prove that Plaintiff made false or malicious

---

[3] As Borrower has not appeared in this action, SFR moved for clerk's entry of default, (ECF No. 69), which the clerk of court subsequently entered, (ECF No. 70).

communications about SFR's interest in the Property. (Pl.'s MSJ 17:1–16, ECF No. 73). Moreover, SFR's slander of title claim is based on the contention that Plaintiff maliciously recorded documents showing that its DOT remained on the Property even after SFR purchased the Property at the foreclosure sale. (Answer 16:6–17:12, ECF No. 25).

In light of the Court's finding that the foreclosure sale did not extinguish Plaintiff's DOT, Plaintiff's representations saying the same were not false and cannot support a claim for slander of SFR's title. *See Las Vegas Dev. Grp., LLC v. SRMOF II 2012-1 Tr., US Bank Tr. Nat'l Ass'n*, No. 2:13-cv-02194-GMN-VCF, 2018 WL 1073385, at *5 (D. Nev. Feb. 26, 2018). The Court accordingly grants summary judgment in favor of Plaintiff as to SFR's claim for slander of title.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Partial Motion for Summary Judgment, (ECF No. 73), is **GRANTED**.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 72), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 74), is **GRANTED in part** and **DENIED in part**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this 20 day of August, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court